FALLS *v.* BUILDING AND LOAN ASSOCIATION.

(*Jackson.*    June  6,  1900.)

1. BUILDING AND LOAN ASSOCIATIONS.    *Waiver of objection to stock-holder's bill to wind up.*

The objection that a stockholder's bill to wind up a building and loan association does not aver that the complainant had first made application to the Treasurer of the State, as required by Acts 1897, Ch. 126, is waived unless it is made by demurrer. This objection cannot be made by the association after answer, and for the first time on the hearing in this Court, to reverse the Chancellor's action in sustaining the bill as a general creditor's bill and appointing a receiver of the company's assets.    (*Post, pp. 23–25.*)

Act construed: Acts 1897, Ch. 126.

Code construed: ¿ 6131 (S.); ¿ 5064 (M. & V.); ¿ 4321 (T. & S.).

Cases cited: Lowe *v.* Morris, 4 Sneed, 69; Brazelton *v.* Brooks, 2 Head, 193; Stockley *v.* Rowley, 2 Head, 492; Lowry *v.* Naff, 4 Cold., 370; Vincent *v.* Vincent, 1 Heis., 333.

2. SAME.    *Same.*

The objection that a stockholder's bill to wind up a building and loan association does not aver that complainant had first made an effort to obtain relief through corporate action, is waived unless made by demurrer.    (*Post, p. 25.*)

Case cited: Boyd *v.* Sims, 87 Tenn., 771.

3. SAME.    *Cannot complain of erroneous appointment of receiver, when.*

Although a building and loan association has been improperly placed in the hands of a receiver under a general creditor's bill, filed by one of its stockholders, every allegation of which was denied by its answer, still this Court will not reverse the Chancellor's erroneous action where all of the stockholders have become parties and acquiesce in the Chancellor's action and the association alone appeals and complains of the decree below.    The association is only the trustee of its stockholders, and if the beneficiaries submit, the trustee cannot complain. (*Post, pp. 25, 26.*)

Falls *v.* Building and Loan Association.

4. SAME. *Stockholder's bill sustained, when.*

A general creditor's bill to wind up a building and loan associa-
tion, that had ceased to do business, filed by a stockholder,
claiming to be a creditor also, will be sustained, although it may
turn out on the hearing that complainant is a debtor instead of
a creditor. He can maintain the bill in his character of stock-
holder. Besides, the bill having been filed on behalf of all par-
ties in interest, became the common suit of all who came in by
petition and gave cost bonds. (*Post, pp. 26, 27.*)

5. SAME. *Amount due upon death of a member.*

The personal representative of a deceased stockholder of a build-
ing and loan association is entitled by statute to the full
amount paid in by the deceased and any profits which have
been realized ; in other words, to the full value of the stock
at the date of the death. (*Post, p. 27.*)

Code construed: § 2135 (S.); § 1750 (M. & V.).

FROM SHELBY.

Appeal from Chancery Court of Shelby County.
F. H. HEISKELL, Ch.

PIERSON & EWING for Falls.

MALONE & MALONE, JAS. M. GREER, and GANTT
& PATTERSON for Building and Loan Association.

BEARD, J. The complainant is a shareholder in
the defendant building and loan association, a
corporation organized under Chapter 142 of the
Acts of 1875 to carry on the business which its
name indicates. Several years before the institu-

tion of this suit a loan was obtained from the association on the shares of stock now held by the complainant, and to secure it in the monthly payment of dues and interest by the shareholder, until the accumulation of interest and profits apportionable to these shares should equal their face value, a mortgage on real estate was executed. Many payments were made in discharge of this obligation by her predecessor in title and by complainant.

Under the charter and by-laws of the association the loan of a borrowing shareholder was fully discharged when, through this accumulation, the shares of stock had matured or reached the face value, and such shareholder was then entitled to have a release of the mortgage security given for the loan. Complainant in her bill alleged the maturity of her shares of stock, and that upon a fair adjustment of her account with the association, she not only was entitled, at the date of the filing of this bill, to a satisfaction of the mortgage on her property, but to a balance due from the association to her, as to which she claimed to stand in a creditor's relation to it. The bill alleged that on making a recent demand upon the party having charge of the affairs of the association for a release of her property, the demand was denied, and a claim was made that she was still indebted on this loan in the sum

Falls *v.* Building and Loan Association.

of $909.55. This claim is averred to be unauthorized and oppressive.

It is further alleged that for many months before the filing of this bill the association had made no loans, nor had done any other business peculiar to such an organization; that while thus having ceased all active operation it still maintained a mere form of life, at a considerable expense, the burden of which fell upon herself and other shareholders of the association without any corresponding profit to them. Much mismanagement and abuse of their trusts by the officers of the association is charged in the bill. Among other evidences of this violation of their trust obligations it is alleged that they had turned over to an irresponsible committee all corporate assets, to be managed as its members might deem best, and that thus having first ceased all building and loan business, the board of directors had then abandoned their duty and sought to delegate their power to this unauthorized body. In view of all this, complainant, filing her bill both as an alleged creditor and as a shareholder, prayed that it be taken as a bill filed in the interest of creditors and shareholders and so adjudged; that a receiver be appointed, and that the association be wound up under the order of the Chancery Court, and the rights of all parties in interest be established by proper decree.

This bill was answered by the association, and

by those of its officers and directors who were made defendants with it. This answer denied seriatim every material allegation of the bill, and then gave an elaborate history of the operations of the association. It denied that complainant was a creditor. It protested against the Court taking charge of its affairs and placing them in the hands of a receiver, insisting that such a course would bring insolvency to a then solvent institution.

Upon these pleadings the Chancellor adjudged the bill to be a general creditors' bill, directed the Clerk and Master to give notice by publication to creditors and shareholders of the pendency of the suit, requiring them to make themselves parties to it and set up their claims therein. He also appointed a receiver and placed him in charge of all the books and other assets of the corporation.

Publication was made as directed, and from time to time all persons interested filed petitions setting up their respective claims, and, upon executing satisfactory cost bonds, were made parties to the cause. Much evidence was taken, and finally there was a reference to the Clerk and Master, who was ordered to state an account, showing the condition of the association and the rights and relations of all parties in interest. This was done. A full report was made answering in detail every matter covered by the refer-

Falls *v.* Building and Loan Association.

ence. Among other findings the Clerk reported that the complainant, instead of being a creditor of the association, was to a large amount its debtor. This report was, with immaterial changes, ultimately confirmed by the Chancellor. From his decree of confirmation, as well as from the interlocutory order adjudging the present bill a general creditors' bill, and that the association should be wound up under the direction of the Court, and appointing a receiver, the Anglo-Teutonia Building and Loan Association has appealed. The complainant has also perfected an appeal from the decree confirming, over her exceptions, certain portions of the report of the Clerk and Master.

We will first dispose of the assignments of error made by the defendant association. Those most earnestly pressed are directed to the action of the Chancellor in entering the interlocutory order above referred to.

It is said that this order was improperly entered, because of fatal omissions in complainant's bill, and that this error should have been corrected by a dismissal of the cause at the hearing.

By Chapter 126 of the Acts of 1897 the Legislature of Tennessee, in amending the Building and Loan Association Act of 1875, provided that whenever a stockholder became dissatisfied with the management of the affairs of the corporation by its board of directors and officers, such stockholder should apply to the Treasurer of the State

for an examination into the affairs of the association, and a correction of the same by him. It further provided that no such suit should be instituted by a stockholder of a building and loan association without having first made this application to the Treasurer.

This amendatory act, in the particulars indicated above, was passed to protect these associations from captious and vexatious litigation instituted by dissatisfied shareholders. By it the Legislature intended to provide a shield against such litigants, but it was not its purpose to compel its use. In a suit like the present, brought by a complaining stockholder, the defendant association might insist upon a strict compliance with the terms of this amendment, and an averment in the bill to that effect before being dragged into the Courts for investigation; but yet if it did not see proper to avail itself of the protection thus· afforded, but submitted itself to the jurisdiction of the Court, then, in a case calling for equitable relief, this would be given. For the lack of an allegation that a shareholder had pursued the course required by the statute, in a case falling within it, his bill would be dismissed upon a demurrer directed to this omission. But this defect could be reached in no other way. An answer is a waiver, and is, in effect, an implied agreement upon the part of the defendant to submit the merits of the controversy to the Court. Code (Shannon's) § 6131;

*Lowe* v. *Morris,* 4 Sneed, 69; *Brazleton* v. *Brooks,* 2 Head, 193; *Stockley* v. *Rowley, Id.,* 492; *Lowry* v. *Naff,* 4 Cold., 370; *Vincent* v. *Vincent,* 1 Heis., 333.

This is what was done in this case. Instead of demurring, a carefully prepared answer was filed, and the present objection is made for the first time in this Court. It comes too late.

It is further insisted that the bill was vitally defective, because of its failure to allege that the complainant had exhausted every effort within the corporation to right the wrongs against which she sought relief, before bringing her suit. *Boyd* v. *Sims,* 87 Tenn., 771. The answer fatal to the first contention, is equally so to this.

But independent of these considerations, it is said great wrong was done to the association by the Chancellor, who, without evidence of mismanagement on the part of its officers, and in spite of its answer denying every material averment of the bill, took charge of its affairs and placed its assets in the hands of a receiver.

It might be conceded to the counsel of the association that upon the record as it then stood this action of the Chancellor was possibly erroneous. But even if error, it cannot now be corrected at the instance of the corporation. The record shows, in answer to the notice of the pendency of this bill as being filed for the benefit of all interested, every shareholder of the as-

sociation has made himself a party to these proceedings, and by petition has asked to have his rights established and protected by proper decree. This has been done, and these beneficiaries are not now complaining.

This appeal is prosecuted by the Anglo-Teutonia Building and Loan Association *eo nomine.*

While in contemplation of law the property and rights of a chartered association belong to the corporation as an entity, the stockholders are the real parties in interest. 1 Mor. on Pri. Cor., Sec. 237. The artificial body is but the representative of its stockholders, and exists mainly for their benefit. *Sawyer* v. *Hoag,* 17 Wall., 610. So the beneficiaries of the trust, the real parties in interest, having taken the benefit of this litigation, and making no complaint of what has been done, their trustee having no independent interest, cannot be permitted to intervene between them and the decrees.

Again, it is insisted the bill should be dismissed, because, upon stating the account, it develops that complainant is a debtor and not a creditor of the association. To this two answers may be made. First, the bill of complainant was that of a shareholder claiming by an excess of payments to be also a creditor; second, that having been filed in the interest of all parties interested in the corporation, the cause has become one in common to all who, coming in by petition and executing

cost bonds, have had themselves made parties to it. Story's Eq. Pl., 5, 99; *Vance* v. *Sanders,* 8 Bax., 299: Waite on Ac. and Def., Vol. 2, p. 420; Eng. & Am. Enc. Pl. and Pr., Vol. 5, pp. 554, 555; *Idem,* Vol. 6, pp. 853-986, Sec. 11; *Austin* v. *Cochran,* 3 Bland (Md.), 341; *Johnson* v. *Hammerly,* 24 Beavan, 498.

Two errors are assigned by complainant. The first is as to the allowance to the administrator of the estate of Gamrie C. New, deceased. New, in his lifetime, was a nonborrowing shareholder in this association. His monthly dues on his shares of stock were paid to his death. This corporation was organized under the general corporation Act of 1875. A section of that Act, carried into the Code (Shannon's), § 2135, is as follows: "The personal representatives, upon the death of a stockholder, shall be entitled to receive the full amount paid in by the deceased, and any profits which have been realized."

The full value of this stock at the time of New's death was allowed by the Clerk and Master and decreed by the Chancellor. There was no error in this. This was in exact accord with the statute.

The second error assigned was as to an allowance of two hundred and fifty dollars to Mr. Hirsch, for services rendered by him to the association before the appointment of the receiver.

Falls *v.* Building and Loan Association.

This allowance was proper. His services were valuable, and the allowance was reasonable.

The receiver also appealed and assigns errors. The Clerk and Master allowed him compensation at the rate of ten per cent. on the amount realized by him. On exception the Chancellor cut this allowance to five per cent. On the record we will modify the decree of the Chancellor, and allow him compensation at the rate of seven and one-half per cent.

In all regards the decree of the Chancellor is affirmed. The cost of this Court and Court below will be paid out of the funds of the association in the hands of the receiver.